Thank you. We'll resume with 24-6132 Devon Energy Production Company v. Department of Interior, and we'll start with Mr. Leggett. Your Honor, may it please the court, Poe Leggett. Leggett, I apologize. And you look familiar, so I probably mispronounced your name in the past, I apologize. You can call him Judge Hertz. I would like to reserve, I'm here for Devon Energy, I hope to reserve three minutes, we'll see. The district court incorrectly upheld an interior department order demanding more royalties on natural gas. Between 2004 and 2008, Devon produced gas from two geological formations in New Mexico. One was coal bed methane containing a high amount of the pipeline contaminant, carbon dioxide. The other was conventional gas, which lacked contaminants, making it unmarketable. Two different midstream companies transported and processed Devon's gas, Williams and Enterprise. One company charged an unbundled, charged a so-called bundled rate, meaning it was one fee for all services under the contract. The other charged a partly bundled fee. Adhering to a 1997 settlement between Devon and Interior, Devon did not deduct from its royalties 7.78 cents per thousand cubic feet to remove excess CO2 from the coal bed methane. But the order assumed Devon had deducted all bundle charges anyway. It also assumed Devon's conventional gas was not in marketable condition. It also disallowed all Devon's deductions, and finally it ordered Devon to separate marketability costs by unbundling the two transportation systems it had used. It gave Devon two alternatives. One was to take no allowance at all. The other was to use the department's non-binding UCAs, unbundling cost allocations for these two plants. But if Devon used those two, the government would still come back later and audit Devon to make sure that the UCAs accurately reflected Devon's actual costs for these two systems. Didn't the Department of Interior also say that you could calculate your own transportation costs through your own methodology? Your Honor, they did say that in their response brief on this appeal, and that is incorrect. The department's position is that actual costs means the cost of the system that the company is actually using, and in a moment I will find you a citation to the appendix for that. So your review is de novo. The errors are that the order ignored the coal bed gas settlement. Second, it violated a statutory duty to identify Devon's errors and give facts and reasons for treating the conventional gas as unmarketable. If the court disagrees with me on either of those points, then our due process argument must be considered. Let me back up on the cost. If you have a bundled price from a company like Enterprise, and it charges, this covers all the things we might do to your gas, including making it in marketable condition. But it turns out that your gas is already in marketable condition when it enters their system, so they don't have to do anything. Are you still paying some money to Enterprise to have them available to take out contaminants if necessary? And even though it turned out that it wasn't necessary, we spent money on that, and that should be deducted from our expenses. How does that work? I'm sorry, that has not been the department's position before, because it is pretty easy to determine whether a processing plant has had to treat gas that had become unmarketable. It's a simple matter of taking the gas analysis report and comparing it with the pipeline physical quality specifications and seeing if our gas analysis has higher numbers than what the pipeline allows. And in those cases, there might be a need to go unbundle. But the evidence here was that throughout the period, the gas was well below standard for the only contaminant that was even mentioned in the record, and that is carbon dioxide. So, there are records kept of this that... I'm sorry. So, there are records kept of this that someone can look at and say that this gas was, in fact, not the coal bed gas, but the other gas, conventional gas, is that what it's called? That it was always in marketable condition when it got to the processors? That is correct. And... Do we have that in the record? We do. It should be in second or third appendix at, I believe it's 389. Try to confirm that very quickly. As you're finding that, it just hurts. Do you mind if I follow up with... Please. Let me test you. Not test you, but ask you. That's not my recollection. My recollection is that Devin responded to the audit saying that the Mesa Verde formation generally satisfied the carbon dioxide limits. I don't remember the word always. It used the word generally. In fact, I think that's the word that you used in your appellate briefing. And so, let me just ask, assuming that I'm right, and I might be completely wrong, if you did deduct 100% of the cost of putting the Mesa Verde formation gas, the conventional gas, through the treater and said, well, that wasn't to make it in marketable condition because it was already marketable. If 10% was unmarketable, exceeded the threshold for carbon dioxide, and 90% was marketable, and you're deducting 100%, they weren't saying that you didn't have... That 100% of that was not deductible. They're just saying you have made a systematic and repeated error in the way that you are reporting to the state tax division. So, why isn't that a problem if it was generally marketable under the carbon dioxide threshold, but not always? The word generally was in a letter to the government that, as I recall, was covering the general span of the history of audits on these properties, which go back to 1990. During the audit period, the government had an opportunity to identify whether there were cases when we exceeded carbon dioxide specifications. And your honor, if they had, then your premise would be correct. It would have been our obligation to go in and figure out if the findings were correct. And if so, try to come up with a way to unbundle. But the record doesn't show that here. And you're saying, as I understood you to say a couple of moments ago, that in fact, the record shows that it was marketable, that all the gas that came to the processors was marketable. That's apparent from records kept at these facilities over the years. Is that correct? That is correct, your honor. A lot of the records are not in the appendix. One that is, that will illustrate the point, is at appendix 389. I think that's volume three. But it shows carbon dioxide readings. And here the government has not stated in the record what it thinks the marketable condition level is. Historically in this area, they've said somewhere between 2% and 3%. But they've taken no position on that here. So there's no way for me to argue or for the court to determine from the record whether Devin was in violation of the marketable condition cap on CO2. You may proceed. Okay. I'll go back to the settlement agreement. The decision clearly ignored it. And the rule that the court should apply is the important aspects test that was illustrated this summer in American Wild Horse Campaign, 144F4 at 1190. There BLM had considered many aspects of wild horse management, but it had failed to consider maintaining a thriving natural balance. What made the natural balance issue important was that the statute required it. BLM ignored it. This court overturned it, even though it had properly considered some other issues. Now the district court here felt that the rule did not apply because the settlement only covered coal bed methane, not also natural gas, conventional gas. But the test is an important aspect, not all aspects. And by legislative rule, the royalty settlements outranked the actual text of the royalty rules that the government is trying to apply here. So by binding interior department regulation, they have made the 1997 settlement an important aspect, meaning they at least had to consider it. Didn't the district court say that the 98 settlement had expired? No, it didn't. It didn't reject the settlement. But the reason for your question is that I think it's fair to say the court may have besmirched without finding because it's at footnote 14 in its opinion. The issue there was that there are two parts to the settlement, a transportation rate and a treatment rate. At the time of the settlement, the transportation rate was set by three contracts with specific cents per cent, I'm sorry, cents per MCF values. And so that's what the parties used in the deal. Those were set to expire in 2000, but just the transportation rate was set to expire. The treatment rate did not contain similar language. We explained to the district court, and this was the only thing he took issue with, was that when those transportation rates expired with the contracts, we would be required to use the next round of contracts. He said he didn't see the support for that. The support for that is because the regulation would require us to use the new contract. Those would be our arms rates. So that was his question, but he never said the settlement had expired. So the contracts setting the transportation rate had expired, but the contract setting the treatment rate had not. Well, the treatment rate was not a contract number, Your Honor. It was agreed to by the department and by Devin. And because figuring out treatment is a cumbersome issue, they agreed on a fixed number to go forward. And why would they continue that rate, but not the transportation rate? What's the purpose of distinguishing them? Well, I do not know, and the record does not reflect why the parties drew that distinction. And the only reason would be, I guess, would be to make clear that there were two rates, and they wanted to set them all in cents per MCF rather than existing contracts, future contracts for transportation. That's just the language they decided to use. So if this were remanded for the agency to review whether the settlement agreement affected the arrangement, that's the sort of thing that would have to be pursued on remand, is figuring out whether the contract really does terminate the treatment rate agreement or not, depending on what the purpose of treating the treatment rate differently from the transportation rate, whatever. Is that fair to say? It is. They would also have to consider the arguments they declined to consider, and the district court declined to consider, on the actual text of the agreement about how no language limited the treatment rate to a time period, and the department's acceptance of the treatment rate after the settlement. A whole long line of cases on that. Yes, but that's... Yes, Your Honor. We've got a few seconds left. All right. Well, on due process, you've already, I think, put your finger on it with one of the first questions about the availability of other rates. No, they won't accept those rates, and it's a post hoc argument. My time is up. Thank you, counsel. Mr. Adams, you may proceed. Good morning, and may it please the court. John Adams on behalf of the United States Department of Interior. Plaintiffs' appellants have put forth many arguments for the court to consider, but the overarching issue is whether, under section 1724 T4B, Honor properly ordered Devon to perform a restructured accounting when Devon unilaterally reduced its royalty payments to our public FISC for public resources it had extracted from our public lands. Already, we have discussed at length the settlement agreement processes and CO2, so I'm just going to jump right there. Devon argues that the 2016 order requiring it to perform a restructured accounting is arbitrary and capricious because Honor did not consider the settlement agreement. For a few reasons, Devon is wrong. But to begin with, I'm just going to take a step back, and I'm going to contextualize a little bit more the 2016 order. The agency issued an order for Devon to perform restructured accounting. In plain terms, this requires Devon to perform a reevaluation of its financial records, including unbundling costs to disaggregate improper allowances. Importantly, this is just one step in a comprehensive process to allow the agency to review the correct royalty rate that Devon owes the United States for extracting natural gas on public land. During this process, Honor will still consider the settlement agreement. It will still consider the CO2 that we heard from counsel, whether this court affirms or remands. The agency is just requiring Devon to show its work for its claimed allowances. And let me describe just in a little bit more detail what will happen, whether this court affirms or remands, and this leads to my point, and why the district court got it right. As the district court found, plaintiffs did not contend that the settlement agreement pertained to all production, or that a methodology established by the settlement agreement encompassed all transportation and processing allowances. Why wasn't it a significant part of the problem when there's no dispute that it's 82% of the disputed royalties? Your Honor, that is a disputed fact, and Devon is asking this court to engage in fact-finding when the agency is still going through the process right now. We don't know. I didn't mean to talk over you, but let me just kind of reframe the question. As I understand it, tell me if I'm wrong, that one of the issues is, did the government, the Department of Interior, fail to consider a significant part of the problem when they decided that there was a systematic and repeated irregularity in Devon's reporting? So they say, well, when they get the audit letter from the state, they say, well, we have this settlement agreement. They make the argument that counsel made today that the treatment costs for 7.78 continues in perpetuity. They make that argument. The agency doesn't address it at all. And now, true, if there's restructured accounting, maybe they'll decide it now. But before we can affirm, don't we have to decide that OSMRE did not, or I may be getting my agencies wrong, failed to consider that the Department of Interior failed to consider a significant part of the problem. I mean, they've said it's 80% of the disputed royalties. I don't remember seeing anything in your brief saying, well, it's not 82%, it's 68%. It's a lot. Why isn't that a problem since the government didn't clearly, I mean, they don't, the word settlement agreement don't appear in the order. I understood, Your Honor. The settlement agreement was attached and it is the Office of Natural Resources Revenue or Honor. That's what I mean by saying honor. Let me just point the court to the record about an important factual finding that's undisputed that Honor made here. Honor on Appendix 176 found that in the agreement, Enterprise and Williams, I'm paraphrasing, it's EFS and WFS, but it's Enterprise and Williams. Those are third-party vendors that Devin contracted with, quote, provide gas gathering, dehydration, treating and processing services for a single bundled fee. Then the factual finding goes on. The services provided include functions required to place gas in a marketable condition, end quote. So Your Honor, to answer your question, we just don't know what costs Devin has paid for those services. Devin says right now that the settlement agreement covers CO2. But as the agency found, the contracts with the third-party vendors cover way more than CO2. It covers gathering services, which this court found in API against DOI just two years ago, are not allowances that a lessee can take from a royalty rate that it owes the federal government. And the restructured accounting order is just asking Devin for more information to prove up its allowances. It may very well be the case that the settlement agreement eventually may touch upon some of the costs that Devin pays these third-party vendors. We just don't know. The agency is just asking Devin to show its work. And that's what the order is doing right now. And so to answer your question more pointedly, if the court affirms, the agency will continue to consider the settlement agreement, even whether it expires, which it does. So, doesn't the agency have to make some supportable finding of underpayment before it starts the process that it initiated nine years ago, eight years ago? Does it not have to do that? In 2016, well, it did. It made a preliminary finding that Devin had been underpaying its Well, it made that finding. And what Devin is saying is there was no basis for the finding. Is that a correct statement of what's at issue here? I think Devin argues a few bases that it contends renders the order arbitrary and capricious. And to your point, Your Honor, I think this goes into counsel's argument where Devin asserts that the 2016 order was arbitrary and capricious because Honor did not prove that the gas was in a marketable condition. So, making a factual predicate finding. But the district court got it right when it concluded that Honor's reasons for the 2016 order did not depend on quality specifications for marketable gas, but on the regulations that state categorical rules regarding deductible allowances. And those categories... Okay. I understand Devin's position. It's two parts. Combining to show that there's no reason, no sound reason for the agency to have ordered this process to start. With respect to coal gas, I'm saying there's a settlement agreement that covered that. And that supersedes any regulations. So, for all the Fruitland coal gas, and I think it was coal gas from another area, that's resolved by the settlement agreement. And for conventional gas, there's no evidence that it wasn't marketable before it went to the processor. So, there's no evidence of any processing required to make the gas marketable that should not have been deducted. And if Devin is correct about that, didn't the agency have to explain why it rejected those contentions? Either explain that... Address the settlement agreement and explain why it thought it had expired. Maybe not prove it, but at least address it. And also address why it thinks that Devin was paying to have conventional gas brought to marketable condition. What's wrong if I'm doing their position correctly? And you can correct me on that. But what's wrong with that argument? Go ahead. The evidence shows, Your Honor, that Devin had a contract with third-party vendors, specifically Enterprise and William, to provide functions that require it to get its natural gas into a marketable condition. And we just don't know the extent to which those costs, how much Devin was paying for those costs. But the contract itself that the agency cites in its 2016 order at Appendix 176 is the evidence. And Judge Bacharach, to answer your question that you exactly right, that Devin had stated in the record, and I'll quote it, Devin's conventional gas generally does not require treatment to be in a marketable condition. That's from its opening brief on pages 38 and 39, and it's citing Appendix 267. And so there are a lot of facts out here that we just don't know. And what the 2016 order does is require Devin to just show its work, to show its unbundled costs for the cost that it's paying Williams and Enterprise to put its gas into a marketable condition. Why wouldn't it be satisfactory for Devin to say the settlement agreement applies and the agency is compelled to accept the, whatever sense it is per MCF, has the cost of making the coal gas marketable, and then supplement that with showing that there's no indication. In fact, the record is to the contrary. The record shows that the conventional gas was in marketable condition when it got to the processor. Would you agree that that would be sufficient response by Devin? No, Your Honor. Why not? Because Devin's paying for services to put its gas into a marketable condition, and the agency is just asking for an unbundling of those costs. I'm not aware of why Devin is paying for these costs, if it contends that its gas is already in a marketable condition. And all the agency is asking for Devin is just to show its work and to prove that its gas is in a marketable condition, or it's not paying for costs or functions or services related to putting its gas in a marketable condition that this court's against DOI, or even the federal regulations, 30 CFR section 206152I, does not allow any lessee to deduct those costs from the royalty payments it owes to the United States. Let me pursue this a little bit. We'll give everybody some time to ask questions. Right. I thought Devin's brief was saying that these particular services, you say, are used to make the gas marketable, or services that are used for other purposes. There's no evidence that these services were used to make the gas marketable. In fact, the marketability processing is done upstream of, well, you know the point I'm making. How do you respond to that? It is true that there are regulations that do allow for these types of costs. The point that the agency wants to make is that we just don't know where those costs fall in. It could be the case that Devin is performing, or the third-party vendors are performing services for Devin that fall within another regulation. It could also be the case that they're performing services for Devin that fall within a prohibition of Devin taking allowance from the royalty that it owes. We just don't know. That's why it's important for Devin to unbundle its costs to show its work so that the agency can make that assessment. That's part of the process point I tried to make earlier. Go ahead. Doesn't the Royalty Fairness Act, though, require a factual basis for that determination? You're just speculating that there might be a problem. Don't you have to do more than that? Basically, what you've done with the order is shift the burden of proof to Devin, i.e. to show its work to prove its costs, rather than you making a factual determination that there's a problem with the submitted deductions that they're taking. Doesn't that invert the statute? No, I don't think so, Your Honor. You're right about the statute. The factual finding that we point to in our brief is the contract that Devin entered into with its third parties. We contend that it is still Devin's burden to prove those costs. The agency just doesn't have that information and is asking Devin for it. Can the agency get that information from the transport company or the processor? Not that I'm familiar with, Your Honor. Well, here's what troubles me, and maybe this is something that's to be handled in the future, but it seems to me that if, in fact, the settlement agreement was still in force, so marketability costs for the coal gas is taken care of through what Devin has paid consistently by applying this settlement agreement figure, and it's also true that Devin is not submitting the gas Devin is sending to the processors is already marketable, then Devin shouldn't have to do anything more. There's no need to unbundle any cost, but you're imposing on Devin a burden to do something that it shouldn't have to do if it's two, I'll say, fundamental assumptions, assertions are correct, and that seems unfair. If all you're saying the agency has done is said, you know, we've got some questions, you need to answer it, then Devin should be allowed to answer the question by showing that the settlement agreement is still in effect and that the gas it's submitting to the processors is marketable, but your order doesn't seem to allow that. You say you have to unbundle the cost, which is a major undertaking, particularly when they don't have access to the data from the processors. It would comfort me if you said they could do all this downstream from this proceeding, but they ought to have a chance to make that their case to the agency at some point. What am I missing? Well, I would just revisit, I see the amount of time, so I'll just simply say that I would revisit my arguments earlier about if this court affirms the settlement agreement is still in play. It just applies to CO2, but the contracts that Devin has with the third-party vendors cover way more than that, so the settlement agreement, as the district court found, will not resolve the unbundling issue, nor will it resolve this case. Devin still has to contend with other services that it's paying for these third-party vendors, and if I'm wrong about that, Your Honor, and the district court is inclined to remand, the proper course on remand would be to remand without vacater for the agency to consider the settlement agreement and to consider whether it expires, which the agency, which we contend it plainly does. Well, would they have an opportunity on remand to show, with the records that counsel referred to, that the gas coming, the conventional gas coming to the processors is already in marketable condition? Is that something they could do to resolve this in conjunction, in combination with showing that the settlement agreement was still in force? Would that be adequate? Yes, Your Honor, the agency will consider arguments, will consider records, of course. I think Devin's going to have to contend with the record evidence already that states that its gas was generally in a marketable condition and what that means and whether it had to do some type of function or service to put its gas in a marketable condition, but the agency will consider arguments and records, of course. Of course. It sounded to me, the way I saw the order, they had to compute, they had to unbundle the cost, which is a massive undertaking, perhaps an impossible undertaking, and what they're saying is it's a totally unnecessary undertaking because the gas was marketable. So, I'm not sure that the agency position allows for what would seem to be fair here. Well, Your Honor, I just want to point out, I think you get into the impossibility argument that Devin has asserted in his papers and in that oral argument this morning. The order itself offers alternatives to Devin to comply with it. It doesn't have to unbundle its cost. It can take the unbundling cost allowances, the UCAs that the government explains to it in its response brief. Were there any, this period that we're talking about is 2004 to 2008 and these UCAs, as I understand it, didn't begin until October 2009. So, how could they have used the UCAs? They can use them now, Your Honor. That's what the order is. Are they retroactive? Correct. And then I just want to clarify one thing. As we stated in our brief, Devin also may do its own unbundling calculation and the citation for that in the order is Appendix 182. That's something that dozens of other lessees do with the agency and historically most of the proposed unbundling methodologies proposed by the agency are accepted. Could they use then their transportation costs at their other off-site leases? Yes, Your Honor. They can submit methodologies for honor to consider and approve. They can submit anything that they want, but does the government accept those? Or are you going to say, no, those are dissimilar? Well, I don't know. I would have to see what they submit, but the point is they are free. Other dozens of lessees have done this with Interior where they submit their own proposed methodology and there's a lot that goes into it about the specific site, the specifications of the gas and everything. I can't speculate on what the future might hold, but it's a reasonable submission. I mean, mind you too, the regulations only require reasonable actual costs. Devin reads the reasonable word out of it and just says it's only actual costs, but it's reasonable actual costs. And Devin is free to submit its own methodology to obtain the reasonable actual cost that is required by the regulations. Thank you, counsel. Case is submitted and counsel are excused.